**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA MARTIN,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 05-CV-920** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **JBS TECHNOLOGIES, LLC,** | : | **Magistrate Judge Abel** |
| | : | |
| **Defendant.** | : | |
| | : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the Court on a Motion for Summary Judgment by Defendant
JBS Technologies, LLC ("Defendant" or "JBS").  For the following reasons, the Court
**GRANTS** in part and **DENIES** in part Defendant's Motion.

### II.  BACKGROUND

#### A.  Facts

Plaintiff Lisa Martin ("Plaintiff" or "Martin") was employed as a graphic designer by
Defendant from January 16, 2000 until October 20, 2003 in Steubenville, Ohio.  Defendant,
citing Plaintiff's poor job performance, terminated her employment on the day she returned from
a maternity leave.  Following her termination, Plaintiff alleges that Defendant retained her
services as a consultant/independent contractor.

Subsequently, Plaintiff became a defendant in a state court action in the Court of

Common Pleas for Jefferson County, Ohio (hereafter, the "Snyder case").[1]  The plaintiffs in that case were Douglas Don Snyder ("Mr. Snyder"), a former minority shareholder of JBS, and his wife, Lora Faye Snyder ("Mrs. Snyder").  The defendants in the case were Strength Capital Partners, LP, JBS, and ten individuals with various connections to JBS, including Martin.  The plaintiffs' complaint alleged that the defendants were liable to them under six legal theories: (1) fraudulent misrepresentation; (2) wrongful termination (Mr. Snyder); (3) wrongful interference with an employment relationship (Mr. Snyder); (4) wrongful termination (Mrs. Snyder); (5) wrongful interference with an employment relationship (Mrs. Snyder); and (6) defamation.

In response to the allegations in the Snyder case, Martin stated a counterclaim against Mr. Snyder, alleging: (1) defamation; (2) breach of contract; (3) misuse of legal procedure; (4) interference with employment relationship; and (5) tort of outrage.

On February 2, 2005, the state court dismissed all of the claims in the Snyder case, except the claims and counterclaims involving Martin, pursuant to a stipulation.  On January 6, 2006, the court in the Snyder case dismissed with prejudice all of the claims and counterclaims involving Martin, pursuant to a second stipulation.  Plaintiff was never indemnified by JBS for her defense in the Snyder case.

### B.  Procedural History

On December 29, 2005, Plaintiff initiated this action against Defendant in federal court. Plaintiff's amended complaint (the "Complaint") alleges that Defendant is liable to her for: (1) a violation of the Family Medical Leave Act ("FMLA"); (2) breach of contract; (3) common law

---

[1]The caption for this civil case is *Douglas Don Snyder, et al. v. Strength Capital Partners, LP, et al.*, Case No. 04CV367.

gender discrimination; (4) a violation of Ohio public policy; (4) indemnification for the Snyder case; and (6) the tort of outrage.  The Complaint seeks to recover compensatory and punitive damages.

On January 20, 2006, less than one month after Plaintiff filed the Complaint, Defendant filed a Motion for Summary Judgment on all of Plaintiff's claims.  Plaintiff timely filed a Memorandum Contra, and Defendant filed a Reply Memorandum.  Counsel for both parties appeared before the Court for oral argument on Defendant's Motion on August 8, 2006. Accordingly, this matter is ripe for decision.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).  In response, the non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993) (citations omitted).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

3

The Court also must interpret all reasonable inferences in the non-movant's favor.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the non-moving party and must refrain from making credibility determinations or weighing the evidence).  The existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; however, there must be evidence from which the jury reasonably could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding summary judgment appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

## IV.  ANALYSIS

Defendant's Motion for Summary Judgment asserts three principle arguments: (1) that claim preclusion bars Plaintiff's first four claims in the Complaint; (2) that Plaintiff cannot sue for breach of contract of the indemnification provision in Defendant's Operating Agreement; (3) that Plaintiff has not alleged sufficient facts to support her claim for tort of outrage.[2]  The Court will address each of Defendant's arguments separately.

### A.  Claim Preclusion

First, Defendant contends that Plaintiff's first four claims in the Complaint, which each relate to her termination from employment, are barred by the doctrine of claim preclusion because she should have asserted those claims during the Snyder case.  Each of Martin's

---

[2]The Court will refer to this claim as one for intentional infliction of emotional distress.

counterclaims against Mr. Snyder in the Snyder case involved the manner in which JBS, and more specifically, its agent, Mr. Snyder, terminated her employment.  In this case, Plaintiff's first four causes of action are based upon the manner in which JBS terminated her employment.[3] Because Plaintiff's allegations in both actions arise from her allegedly unlawful job termination, Defendant contends that the four claims pending before the Court in this case are barred by claim preclusion.

Claim preclusion refers to "the effect of a judgment in foreclosing litigation of a matter that never has been litigated because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Expanding upon this concept, the Sixth Circuit has held that, "when asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citing *Migra*, 465 U.S. at 81).  Under Ohio law, claim preclusion has four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could

---

[3]The first claim in the Complaint alleges that Defendant violated FMLA when, "during the period of her leave[,] the Defendant JBS required Plaintiff to perform services which unduly delayed the commencement of her leave and reduced the length thereof, and as well, required her to perform services from her home during the period of leave."  Compl. at ¶ 7.  The second claim alleges that Defendant breached an implied contract set forth in JBS' employee handbook when it "failed to follow the termination procedure set forth in the Handbook as it terminated Lisa Martin without cause of any nature."  *Id*. at ¶ 13.  The third claim alleges that Defendant's termination of Plaintiff "discriminated against Lisa Martin on the basis of her sex, female, in violation of Ohio Revised Code 4112.02."  *Id*. at ¶ 15.  The fourth claim alleges that Plaintiff's termination was a violation of Ohio public policy, which includes "allowing female employees to take a leave of absence from employment for reasons of pregnancy."  *Id*. at ¶ 17–18.

have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.  *Hapgood*, 127 F.3d at 493 (referencing *Grava v. Parkman Township*, 653 N.E.2d 226, 229 (Ohio 1995)).  Because claim preclusion is an affirmative defense, Defendant has the burden of pleading and proving each element.  *See Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004).

Defendant claims that all of the claim preclusion elements are met in this case, and therefore, the Court should dismiss Plaintiff's first four claims in her amended complaint, which all relate to Plaintiff's termination from JBS.  According to Defendant, those claims were or could have been litigated during the Snyder case.  Plaintiff counters that claim preclusion is inapplicable here because this action does not involve the same parties, or their privies, as the Snyder case.[4]

The threshold inquiry before the court is whether the relationship between Mr. Snyder and JBS constitutes privity for claim preclusion purposes.  Privity pertains to "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter[.]"  BLACK'S LAW DICTIONARY 1217 (7th ed. 1999); *see also Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994) ("As a general matter, privity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the [claim preclusion]."  (internal quotation marks and citation omitted)).  In determining whether privity between parties exists, Ohio courts "look behind the nominal parties to the substance of the cause to determine the real parties in interest."  *In re Fordu*, 201 F.3d 693, 705 (6th Cir. 1999) (internal quotation marks omitted) (quoting *Fort Frye Teachers Ass'n v.*

───────────────

[4]Plaintiff did not contest the other three elements of claim preclusion.

6

*State Employment Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998)).

In this case, the parties disagree about whether Defendant has the requisite privity with

Mr. Snyder.  In its Reply Memorandum, Defendant asserts:

> JBS *was* a real party in interest in the [Snyder case] – if not *the* real
> party in interest – because JBS was Martin's employer, and her
> claims concerned the termination of her employment.  Don Snyder
> was not Martin's employer; he was the President of JBS.  In both
> the [Snyder case] and the instant case, the employer was JBS and
> Don Snyder was the agent who made the termination happen."

Def.'s Reply Mem. at 3 (emphasis in original).  Plaintiff, on the other hand, claims:

> [I]t is clear that JBS was not the real party in interest in the [Snyder
> case], because JBS would not have been adversely affected by the
> result in the [Snyder case].  For example, if the prior lawsuit had
> been tried in front of a jury, with the result being a verdict in favor
> of Lisa Martin, JBS would not be bound by the decision.  Rather,
> JBS would retain the ability to contest their relationship with Don
> Snyder and to argue that Mr. Snyder was acting outside the scope of
> employment.  JBS' instant motion is simply an attempt to insulate
> themselves from liability, without ever exposing itself to a potential
> judgment for the Plaintiff.  Because JBS bore no risk of an adverse
> judgment against Don Snyder, it was not the real party in interest in
> the [Snyder case].

Pl.'s Mem. in Opp'n at 8–9.  Additionally, Plaintiff indicates that JBS was adverse to Mr. Snyder

in the Snyder case, so it did not exercise any control on Mr. Snyder's behalf in that litigation.  *Id.*

at 10–11.

The Court finds that Defendant has not established privity between JBS and Mr. Snyder

for claim preclusion purposes.  When Martin filed counterclaims against Mr. Snyder, in his

personal capacity, in the Snyder case, JBS was not at risk of having the state court render a

judgment against it.  Martin's claims in the Snyder case were solely against Mr. Snyder.  This

Court's conclusion is buttressed by the fact that JBS and Martin were actually co-defendants in

7

the Snyder case; Mr. Snyder and JBS could not have had the same legal interest in that matter

because they were adverse parties.  *See Johnson's Island, Inc. v. Bd. of Township Tr. of Danbury*

*Township*, 431 N.E.2d 672, 675 (Ohio 1982) ("a stranger to the prior judgment, being not bound

thereby, is not entitled to rely upon its effect under [claim preclusion] or [issue preclusion]")

(citation omitted); *see also United States v. LTV Steel Co., Inc.*, 118 F. Supp. 2d 827, 836 (N.D.

Ohio 2000) ("privity [cannot] be premised solely on the fact that two parties or two entities

ultimately desire the same result") (citing *Johnson's Island*, 431 N.E.2d 672).[5]  When the state

court dismissed all of the claims and counterclaims between Mr. Snyder and Martin in the

Snyder case, it did not preclude Martin from asserting subsequent termination-related claims

against JBS.[6]  Therefore, Defendant's Motion for Summary Judgment on the issue of claim

---

[5]During oral argument, Defendant directed this Court's attention to the decision in *Nye v. Ohio Bd. of Exam'rs of Architects*, 847 N.E.2d 46 (Ohio App. 10th Dist. 2006), where that court affirmed a trial court's application of issue preclusion to admissions in a settlement agreement from a previous civil matter. In *Nye*, the court applied nonmutual offensive collateral estoppel (or issue preclusion) with respect to specific facts that were admitted in a previous civil action. *Id*. at 50–51.  That court noted that preclusion was "appropriate when related to a previously litigated issue but not when applied to the issue of liability."  *Id*. at 51 (citing *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978 (Ohio 1983)).  In this case, however, Defendant urges the court to apply the preclusion principle to the issue of liability regarding Plaintiff's first four claims.  The *Nye* decision does not authorize such action.  Therefore, the court's reasoning in *Nye* does not apply here.

[6]Defendant also cites to an unpublished state court decision for the legal proposition that "a close corporation is in privity with its dominant officer and shareholder."  *Monfort Supply Co. v. City of Cheviot*, 1995 WL 566641, at *5 (Ohio App. 1st Dist. Sept. 27, 1995).  The facts in this case are distinguishable from those in *Monfort*, however, because Mr. Snyder is a terminated former officer and minority shareholder in JBS, and because, as stated previously, JBS did not exercise any control of the litigation between Mr. Snyder and Martin in the Snyder case.  *See* Ohio Jur. 3d, Judgments § 426 ("Although it is stated that there is no bright-line rule as to whether corporate officers or shareholders are in privity with their corporation for [claim preclusion] purposes, the modern general rule is said to be that . . . a judgment in an action to which an officer, director, shareholder, or member of a non-stock corporation is a party has no preclusive effect on the corporation, except for when an independent basis for privity exists . . .

8

preclusion is **DENIED**.

### B. Indemnification for Snyder Case

Second, Defendant argues that Plaintiff's claim for indemnification fails because Plaintiff was only an incidental third-party beneficiary of the indemnification provision in JBS' Operating Agreement (the "Operating Agreement").  Defendant alleges that the Operating Agreement is a contract between JBS and the State of Delaware, and that because Plaintiff is not a party to the Operating Agreement, she cannot recover for an alleged breach.  Plaintiff counters that, because JBS drafted its indemnification provision in the Operating Agreement, the terms of that provision must be construed against Defendant.  Moreover, citing the Delaware statute that enables corporations to indemnify their employees, Plaintiff argues that Defendant intended for the indemnification provision to be "an enticement to lure capable employees with the promise of indemnification," so it should be held accountable for this promise.

Pursuant to section 13.1 of the Operating Agreement, Delaware law controls.  Section 18-108 of the Limited Liability Company Act (the "LLCA") in the Delaware statute grants LLCs broad authority to provide for indemnification by contract in their operating agreements.  *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co. LLC*, 2004 WL 550743, at *2 (Del Ch. Mar. 10, 2004); 6 DEL. CODE § 18-108.[7]  The policy of the LLCA is "to give the maximum effect to the principle of freedom of contract and to the enforceability of limited

---

.") (citing Am. Jur.2d Judgments § 693 and 81 A.L.R.2d 1323).  Thus, the *Monfort* case is inapplicable.

[7]Section 18-108 states: "Subject to such standards and restrictions, if any, as are set forth in its limited liability company agreement, a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever."  6 DEL. CODE § 18-108.

liability company agreements." 6 DEL. CODE § 18-1101(b).  Furthermore, "Delaware has a

strong public policy in favor of assuring key corporate personnel that the corporation will bear

the risks resulting from performance of their duties on the grounds that such a policy best

encourages responsible persons to occupy positions of business trust, so Delaware courts have

read indemnification contracts to provide coverage when that is reasonable."  *DeLucca v. KKAT*

*Mgmt, LLC*, 2006 WL 224058, at *7 (Del Ch. Jan. 23, 2006) (citing *Perconti v. Thornton Oil*

*Corp.*, 2002 WL 982419, at *3 (Del. Ch. May 3, 2002)).

Here, the indemnification provision in section 7.2 of the Operating Agreement reads:

> The Company shall indemnify and hold harmless its Members, its
> Directors, and any other employee or agent of the Company who
> was or is a party or is threatened to be made a party to a threatened,
> pending, or completed action, suit or proceeding, whether civil,
> criminal, administrative, or investigative, and whether formal or
> informal, by reason of the fact that such person or entity is or was a
> Member, Director, employee or agent of the Company, against
> expenses, including attorneys fees, judgments, penalties, fines and
> amounts paid in settlements actually and reasonably incurred by
> such person/entity in connection with the action, suit or proceeding,
> if the person/entity acted in good faith, with the care an ordinarily
> prudent person in a like position would exercise under similar
> circumstances, and in a manner that such person/entity reasonably
> believed to be in the best interests of the Company. . . .  A Member,
> Director, employee or agent may be reimbursed his or its actual and
> reasonable expenses in advance of the final disposition of the
> proceeding if approved by the Members or the Board of Directors.
> Notwithstanding the foregoing, no indemnification shall be
> provided to any Member, Director, or employee or agent of the
> Company for or in connection with the receipt of a financial benefit
> to which such person is not entitled or a knowing violation of law
> or willful, wanton or grossly negligent act against the best interest
> of the Company.

The Court finds that the Operating Agreement, and more specifically, the indemnification

provision in section 7.2, governs the issue of whether to award Plaintiff indemnification in this

action for the Snyder case.  Pursuant to the unambiguous language of section 7.2 in the

Operating Agreement, Plaintiff qualifies for indemnification because she was an "employee or

agent" of JBS during all relevant time periods.  Additionally, the Snyder case, which was

litigated in an Ohio state court, appears to be covered under the requirement in section 7.2,

which agrees to indemnify "a party to a threatened, pending, or completed action, suit or

proceeding, whether civil, criminal, administrative, or investigative, and whether formal or

informal."  Finally, there is at least a genuine issue of material fact at this stage as to whether

Plaintiff's conduct at issue in the Snyder case was taken reasonably and in good faith.  Under

Delaware law, Defendant has not demonstrated that Plaintiff is ineligible to receive

indemnification for the Snyder case.  *See DeLucca*, 2006 WL 224058, at *7.  Thus, Defendant's

Motion for Summary Judgment on the indemnification issue is **DENIED**.

### C.  Intentional Infliction of Emotional Distress

Third, Defendant claims that Plaintiff has not alleged sufficient facts to support her claim

of intentional infliction of emotional distress.  The bases for Plaintiff's claim are that: (1)

Defendant terminated her on her first day back in the office from maternity leave and

subsequently rehired her on an independent contractor basis so that she lost all of her employee

benefits, Compl. at ¶ 27; and (2) Defendant breached a contract to provide a defense to Plaintiff

in the Snyder case, and it refused to indemnify her upon request despite a clear contractual

obligation to provide or indemnify the defense, Compl. at ¶ 28.[8]  According to Defendant,

---

[8]Contrary to Defendant's assertion, Plaintiff's intentional infliction of emotional distress claim cannot be barred by claim preclusion because it is based, at least in part, on Defendant's alleged failure to indemnify Plaintiff in the Snyder case, a circumstance that arose after the Snyder case concluded.

11

Plaintiff has not alleged the requisite outrageous conduct under Ohio law. Plaintiff counters that Defendant's Motion for Summary Judgment on this issue is premature.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio App. 1st Dist. 1997). With regard to the "outrageous and extreme conduct" element, the Ohio Supreme Court explained:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983) (internal quotation marks and citation omitted).

12

Here, the issue is whether the conduct Plaintiff has alleged to support her claim of intentional infliction of emotional distress meets the high standard of extreme and outrageous conduct compensable under Ohio law.  A court does not commit legal error under Ohio law when it grants a defendant's motion to dismiss a claim of intentional infliction of emotional distress because the plaintiff fails to allege outrageous and extreme conduct.  *See, e.g., Springer v. Fitton Ctr. for Creative Arts*, Case No. CA2004-06-128, 2005 WL 1670788, at *5–6 (Ohio App. 12th Dist. July 18, 2005) (affirming trial court's order, which dismissed a plaintiff's intentional infliction of emotional distress claim, and holding that the plaintiff's allegations, "even if proved true, would not amount to conduct that was so extreme and outrageous that it went beyond all possible bounds of decency; nor do they constitute, as a matter of law, conduct that is completely intolerable in a civilized community.").

Plaintiff's claim for intentional infliction of emotional distress is based upon a job termination that was allegedly unlawful and an alleged breach of contract.  Neither of these allegations constitutes a compensable injury under an intentional infliction of emotional distress claim in Ohio.  *See Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) ("[A]n employee's termination, even if based on discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more.  If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress.") (citations omitted); *Brunsman v. W. Hills Country Club*, 785 N.E.2d 794, 800 (Ohio App. 1st Dist. 2003) ("Assuming for the sake of argument that [the plaintiff] had established that a contract existed, absent personal injury to a plaintiff, damages for emotional distress are not available unless the contract or breach is of a kind that 'serious emotional

disturbance' is particularly likely to result.") (citing *Kishmarton v. William Bailey Constr., Inc.*, 754 N.E.2d 785 (Ohio 2001)).  Because neither of Plaintiff's factual allegations, even if true, can form the basis for her claim of intentional infliction of emotional distress under Ohio law, she has failed to state a valid claim against Defendant.  Therefore, Defendant's Motion for Summary Judgment as to the claim of intentional infliction of emotional distress is **GRANTED**.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.  All of Plaintiff's claims survive summary judgment, except for her intentional infliction of emotional distress claim, which is hereby **DISMISSED**.

**IT IS SO ORDERED.**


**/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED: August 16, 2006**

14